UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **SISTER MARY ROSE REDDY, SUE CLIFTON,  JENNIFER ROBIDOUX, JOAN ESPINOLA, TERRY BARNUM, JACKIE PELLETIER, and BETTY BUZZELL;**<br><br><br><br>                    Plaintiffs,<br><br>          v.<br><br>**JOSEPH FOSTER,** in his official capacity as Attorney General for the State of New Hampshire; **D. CHRIS MCLAUGHLIN**, in his official capacity as County Attorney for Cheshire County, NH; **SCOTT W. MURRAY,** in his official capacity as County Attorney for Merrimack County, NH; **PATRICIA M. LAFRANCE**, in her official capacity as County Attorney for Hillsborough County, NH; **TOM VELARDI**, in his official capacity as County Attorney for Strafford County, NH; **PATRICIA CONWAY**, in her official capacity as acting County Attorney for Rockingham County, NH**; CITY OF MANCHESTER, NH; CITY OF CONCORD, NH; CITY OF KEENE, NH; TOWN OF GREENLAND, NH**; and **TOWN OF DERRY, NH**;<br><br>                    Defendants. | Case No. _____ |

## VERIFIED COMPLAINT

Come now Plaintiffs Sister Mary Rose Reddy, Sue Clifton, Jennifer Robidoux, Joan Espinola, Terry Barnum, Jackie Pelletier, and Betty Buzzell, by and through counsel, and for their Verified Complaint against the Defendants, hereby state as follows:

**INTRODUCTION**

1.    This is a civil rights action brought pursuant to 42 U.SC. § 1983 challenging the constitutionality, facially and as applied, of N.H. REV. STAT. ANN. § 132:28 (2014), which creates a fixed buffer with a radius of 25 feet (hereinafter "buffer zone") around the entrances, exits, and driveways of reproductive health facilities that perform abortions.

2.    On June 10, 2014, Governor Hassan signed into law Senate Bill 319-FN, entitled "An Act Relative to Access to Reproductive Health Care Facilities" (hereinafter "the Act"), which creates buffer zones outside of abortion clinics on public ways and sidewalks in which no person may engage in advocacy or protest, remain standing in silence, or even enter.  The law is scheduled to take effect on July 10, 2014.

3.    Within these buffer zones, one may not "knowingly enter or remain on a public way or sidewalk adjacent to a reproductive health care facility within a radius up to 25 feet of any portion of an entrance, exit, or driveway of a reproductive health care facility" which provides abortions.

4.    The state of New Hampshire has no justification for creating even one of these anti-speech zones in traditional public fora, much less creating such zones throughout the entire state. The First Amendment contemplates no possible justification for such a measure. The freedom of speech is at its apex on public streets and sidewalks when citizens wish to persuade other citizens by means of leafleting, personal education, and peaceful protest. The U.S. Supreme Court just struck down a similar law from Massachusetts in *McCullen v. Coakley*, No. 12-1168 (June 26, 2014). *McCullen* directly controls this case and eliminates any plausible legal justification for the law challenged here.

5.    Plaintiffs regularly engage in peaceful prayer, leafleting, sidewalk counseling, pro-life advocacy, and other peaceful expressive activities outside of five of New Hampshire's abortion clinics in Manchester, Concord, Keene, Greenland, and Derry.

6.    Unless this Court grants Plaintiffs preliminary and permanent injunctive relief, the Plaintiffs' leafleting and personal education activities on the sidewalks and streets will be

squelched throughout the entire state of New Hampshire, causing irreparable harm to their freedom of speech as protected by the First Amendment to the United States Constitution. The state, however, will suffer no injury from injunctive relief issued against its unjustified attack on free speech regarding a great issue of public concern. Injunctive relief will preserve the status quo of robust freedom of speech in New Hampshire, which has caused no cognizable public or personal harm and has instead yielded great public benefit.

## JURISDICTION AND VENUE

7.    This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8.    This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PARTIES

10.  Plaintiff Sister Mary Rose Reddy is a resident of Rochester, NH

11.  Plaintiff Sue Clifton is a resident of Sandown, NH.

12.  Plaintiff Jennifer Robidoux is a resident of Windham, NH.

13.  Plaintiff Joan Espinola is a resident of Salem, NH.

14.  Plaintiff Terry Barnum is a resident of Concord, NH.

15.  Plaintiff Jackie Pelletier is a resident of Rochester, NH.

16.  Plaintiff Betty Buzzell is a resident of Richmond, NH.

17.  Defendant Joseph Foster is the Attorney General for the State of New Hampshire.

18.   The Attorney General is responsible for enforcing the Act against Plaintiffs, and is authorized by the Act to bring an action for injunctive relief to prevent subsequent violations of the Act.

19.   Defendant D. Chris McLaughin is the County Attorney for Cheshire County, NH. He has authority to enforce the Act in Cheshire County.

20.   Defendant Scott W. Murray is the County Attorney for Merrimack County, NH. He has authority to enforce the Act in Merrimack County.

21.   Defendant Patricia M. LaFrance is the County Attorney for Hillsborough County, NH. She has authority to enforce the Act in Hillsborough County.

22.   Defendant Tom Velardi is the County Attorney for Strafford County, NH. He has authority to enforce the Act in Strafford County.

23.   Defendant Jim Reams is the County Attorney for Rockingham County. He has authority to enforce the Act in Rockingham County.

24.   Defendant City of Manchester, NH, is a municipality within the state of New Hampshire. It has authority to enforce the Act in Manchester, NH.

25.   Defendant City of Concord, NH is a municipality within the state of New Hampshire. It has authority to enforce the Act in Concord, NH.

26.   Defendant City of Keene, NH is a municipality within the state of New Hampshire. It has authority to enforce the Act in Keene, NH.

27.   Defendant Town of Greenland, NH, is a municipality within the state of New Hampshire. It has authority to enforce the Act in Greenland, NH.

28.   Defendant Town of Derry, NH, is a municipality within the state of New Hampshire. It has authority to enforce the Act in Derry, NH.

## FACTUAL BACKGROUND

### A.  The Act creates buffer zones restricting free speech in New Hampshire.

29.   On June 10, 2014, Governor Hassan signed into law N.H. REV. STAT. ANN. § 132:28, entitled "An Act Relative to Access to Reproductive Health Care Facilities." (Attached

as Exhibit 1). The Act goes into effect thirty days following the date the bill was signed by the governor. Accordingly, the Act will be in effect beginning July 10, 2014.

30.   The Act authorizes anti-speech buffer zones around each of New Hampshire's abortion clinics, presently in Manchester, Concord, Keene, Greenland, and Derry.

31.   The stated purpose of The Act is to "provide unobstructed access to reproductive health care facilities by setting clear guidelines for activity in the immediate vicinity of the reproductive health care facilities."

32.   The Act prohibits anyone from "knowingly enter[ing] or remain[ing] on a public way or sidewalk adjacent to a reproductive health care facility within a radius up to 25 feet of any portion of an entrance, exit, or driveway of a reproductive health care facility."

33.   The Act defines "reproductive health care facility" as any "place, other than within or upon grounds of a hospital, where abortions are offered or performed."

34.   The Act does not apply to "[e]mployees or agents of such facility acting within the scope of their employment for the purpose of providing patient escort services only." The Act defines "patient escort services" as "the act of physically escorting patients through the buffer zone to the reproductive health care facility and does not include counseling or protesting of any sort during such escort service."

35.   Clinic escorts, by the very nature of their work, engage in pro-abortion advocacy, compelling women to come inside the clinic and to continue with the abortion.

36.   It is within the scope of employment for clinic escorts to engage in expressive activity and conduct which is supportive of abortion. For example, the Pennacook Planned Parenthood in Manchester currently has a volunteer opportunity available for a clinic escort. The job description for "Health Center Greeter" states: "The primary duty of the volunteer is to ensure that patients and staff can safely and comfortably access the health center *when anti-choice protesters are present*. Greeters station themselves outside of the health center, greet arrivals, and offer assistance in entering and leaving the center." *See* Planned Parenthood of Northern New England, *available at* https://plannedparenthoodvolunteer.hire.com/viewjob.html?

optlink-view=view-28892&ERFormID=newjoblist&ERFormCode=any   (last accessed June 27, 2014) (emphasis added). Furthermore, qualifications for such position include "[a]n interest in reproductive health care, women's issues, and politics." *Id*.

37.   The Act does not apply to the additional two categories of persons:

- "Law enforcement, ambulance, firefighting, construction, utilities, public works and other municipal agents acting within the scope of their employment."

- "Persons using the public sidewalk or street right-of-way adjacent to such facility solely for the purpose of reaching a destination other than such facility."

38.   The Act allows reproductive health care facilities to "clearly demarcate the zone authorized" by the Act and, if they do so, to post the erection and parameters of such zone with signage, which must contain the following language:

Reproductive Health Center
Patient Safety Zone
No Congregating, Patrolling,
Picketing, or Demonstrating
Between Signs
Pursuant to RSA 132:38

39.   Prior to posting the aforementioned sign, the reproductive health care facility "shall consult with local law enforcement and those local authorities with responsibilities specific to the approval of locations and size of the signs to ensure compliance with local ordinances."

40.   The Act provides that "[p]rior to issuing a citation for a violation of this section, a police officer or any law enforcement officer shall issue one written warning to an individual. If the individual fails to comply after one warning, such individual shall be given a citation. Failure to comply after one warning shall be cause for citation whether or not the failure or subsequent failures are contemporaneous in time with the initial warning."

41.   Violations of the act are to be charged a "minimum fine of $100." In addition, "the attorney general or the appropriate county attorney may bring an action for injunctive relief to prevent further violations" of the Act.

42.   The enforcement provisions of the Act "shall not apply unless the signage authorized in RSA 132:38, II [at ¶ 20] was in place at the time of the alleged violation."

43.   The Act was supported by a "Statement of Findings and Purposes."   The New Hampshire general court found as follows:

> (a) Access to reproductive health care facilities is important for residents and visitors to the state of New Hampshire and is a right that must be protected; (b) The exercise of a person's right to protest or counsel against certain medical procedures is a First Amendment activity that must be protected; (c) Public sidewalks adjacent to reproductive health care facilities in New Hampshire communities are often narrow, measuring between 6 and 8 feet wide. These sidewalks abut city streets; (d) Under federal law 18 U.S.C. section 248 (2010) it is unlawful for any person to obstruct or interfere with another person's access to reproductive health care services; (e) Recent demonstrations outside of reproductive health care facilities have resulted in the fear and intimidation of patients and employees of these facilities; (f) Recent demonstrations outside of reproductive health care facilities have caused patients and employees of these facilities to believe that their safety and right of privacy are threatened; and (g) Recent demonstrations outside of reproductive health care facilities have resulted in the fear and intimidation of residents and patrons seeking to enter or leave their homes or other private businesses adjacent to the reproductive health care facilities.

44.   The New Hampshire general court found that "it is in the interest of public health, safety, and welfare to regulate the use of public sidewalks and streets adjacent to reproductive health care facilities to promote the free flow of traffic on streets and sidewalks, reduce disputes and potentially violent confrontations requiring significant law enforcement services, protect property rights, protect First Amendment freedoms of speech and expression and secure a citizen's right to seek reproductive health care services."

45.   The general court further found that "establishing a limited buffer zone outside of some reproductive health care facilities located in the state of New Hampshire is necessary to ensure that patients and employees of reproductive health care facilities have unimpeded access

to reproductive health care services while accommodating the First Amendment right of people to communicate their message to their intended audience without undue burdens or restrictions."

46. The Act does not properly accommodate the Plaintiffs' First Amendment rights where the general court has completely abolished free speech in zones outside of abortion clinics located on public property which constitute traditional public fora traditionally used for expression of ideas, debate, and protest.

47. The Act prohibits Plaintiffs from effectively reaching their intended audience by completely prohibiting speech within a 25-foot or larger radius of every abortion clinic entrance or driveway in the state of New Hampshire.

48. The Act provides no specific instances of obstructive conduct outside of abortion clinics in New Hampshire to provide support for the law, and its references to "recent demonstrations" causing problems for which the Act was needed are factually baseless.

49. The Act was motivated against pro-life speech.

50. The Act applies only to "reproductive health care facilities" which provide abortions.

51. By its very terms, the Act seeks to limit speech only outside of abortion clinics. Accordingly, it seeks only to criminalize speech in protest of abortion.

52. The Act explicitly provides an exception for "clinic escorts." These escorts and clinic employees allowed to speak in the buffer zones commonly engage in speech which supports abortion within the zones created by the Act. The state is therefore favoring pro-abortion speech over pro-life speech.

53. The Act completely forbids pro-life speech within the zones created by the Act.

54. The Act targets expressive conduct explicitly, purporting to specifically prohibit "Congregating, Patrolling, Picketing, or Demonstrating" in the buffer zones.

**B.** **Plaintiffs engage in free speech that is now restricted by the buffer zones created by the Act.**

55. The Planned Parenthood at 24 Pennacook Street in Manchester, NH, a.k.a. Manchester Health Center, is "a reproductive health care facility" within the definition of the Act, authorized to create the Act's buffer zones.

56. The Act authorizes the creation of buffer zones around the driveways of the Manchester Planned Parenthood. Those driveways are wide and would yield buffer zones encompassing well over 50 feet of the public sidewalk at each driveway, much of the street, and parking along the street.

57. The Manchester Planned Parenthood has no door entrance on the public sidewalk, but the entrance is already buffered by a private parking area between it and the sidewalk.

58. No speech activities on the public sidewalks and ways outside the Manchester Planned Parenthood in recent years have caused or could have caused a problem preventing access to its entrances, because the existing private property buffer between the entrance and the public sidewalk, and the private access between the parking lot and the entrances, already provide patients an ample buffer area.

59. Defendants Foster, LaFrance, and the City of Manchester are authorized to enforce the Act's buffer zones around the Manchester Planned Parenthood.

60. Several of the Plaintiffs regularly go to the public sidewalks and ways outside of the Manchester Planned Parenthood.

61. Plaintiff Sue Clifton regularly goes to the public sidewalks and ways outside of the Manchester Planned Parenthood, and has previously participated in Forty Days for Life campaigns outside of the abortion clinic in Greenland.

62. While there Ms. Clifton and others engages in "sidewalk counseling," in which they attempt to engage in calm conversation with the women going in or leaving the clinic, providing them with information about options regarding pregnancy or about post-abortive healing. They will sometimes also hand out rosaries and cards which describe how to pray the rosary. Ms.

Clifton or others will sometimes hold peaceful signs stating "Let us Help You" or a picture of Our Lady of Guadalupe.

63.   Ms. Clifton's vehicle bears a small pro-life bumper sticker. She regularly parks her vehicle in the street which would be within the buffer zone outside of the Manchester Planned Parenthood.

64.   Plaintiff Jennifer Robidoux regularly prays, both vocally and silently, on the public sidewalks and ways outside of the Manchester Planned Parenthood.

65.   Ms. Robidoux's activities on the public ways and sidewalks outside the Manchester Planned Parenthood also include peaceful sidewalk counseling, speaking to women and men who enter the clinic, and handing out pro-life literature while engaging in the counseling.

66.   Ms. Robidoux is a leader of the Manchester Forty Days for Life Campaign, which seeks to have a peaceful, prayerful presence on the public sidewalks and ways outside of the Manchester Planned Parenthood for all hours of operation of the clinic during a forty day campaign to pray and peacefully act for an end to abortion.

67.   Plaintiff Joan Espinola regularly engages in peaceful sidewalk counseling and prayer on the public sidewalks and ways outside the Manchester Planned Parenthood.

68.   Plaintiff Joan Espinola has also engaged and would like to continue to engage in peaceful sidewalk counseling and prayer on the public sidewalks and ways outside the Planned Parenthood at 4 Birch Street in Derry, NH, a.k.a. Derry Health Center (which is "a reproductive health care facility" within the definition of the Act, authorized to create the Act's buffer zones).

69.   The Act authorizes the creation of buffer zones around the driveways of the Derry Planned Parenthood. Those driveways are wide and would yield buffer zones encompassing well over 50 feet of the public sidewalk at each driveway, much of the street, and parking along the street.

70.   The Derry Planned Parenthood is in a multi-office building. The Act's speech zones therefore serve to prevent free speech around many other offices.

10

71.   The Derry Planned Parenthood's building has an archway on the public sidewalk which leads to an open air walkway but not directly into the Planned Parenthood. The Act is vague about whether this archway gives rise to a buffer zone.

72.   The Derry Planned Parenthood has no actual door entrance on the public sidewalk, but the entrance is already buffered by a private parking area and the common areas of an office building between it and the sidewalk.

73.   No speech activities on the public sidewalks and ways outside the Derry Planned Parenthood in recent years have caused or could have caused a problem preventing access to its entrances, because the existing private property buffer between the entrance and the public sidewalk, and the private access between the parking lot and the entrances, already provide patients an ample buffer area.

74.   Defendants Foster, Conway, and the Town of Derry are authorized to enforce the Act's buffer zones around the Derry Health Center.

75.   Plaintiff Terry Barnum regularly engages in peaceful sidewalk counseling and prayer on the public sidewalks and ways outside the Concord Feminist Health Center at 38 S Main St in Concord, NH (which is "a reproductive health care facility" within the definition of the Act, authorized to create one of the Act's buffer zones).

76.   The Act authorizes the creation of buffer zones around the entrances and driveways of the Concord Feminist Health Center.

77.   The entrances to the Concord Feminist Health Center are not right on the public sidewalk, but their buffer zones may extend into parts of the public sidewalk where Plaintiffs engage in free speech activities.

78.   The parking area of the Concord Feminist Health Center has a massive curb cut "driveway" running nearly the full length of the parking lot on S. Thompson St. The buffer zone around that "driveway" would likely encompass 100 feet or more of the public sidewalk and ways.

11

79. Defendants Foster, Murray, and the City of Concord are authorized to enforce the Act's buffer zones around the Concord Feminist Health Center.

80. Plaintiff Jackie Pelletier regularly engages in peaceful sidewalk counseling and prayer on the public sidewalks and ways outside the Joan G. Lovering Health Center, a.k.a. the Feminist Health Center, at 559 Portsmouth Ave, in Greenland, NH (which is "a reproductive health care facility" within the definition of the Act, authorized to create the Act's buffer zones).

81. Plaintiff Sister Mary Rose Reddy regularly prays on the public sideways and ways outside the Joan G. Lovering Health Center, a.k.a. the Feminist Health Center, in Greenland, NH.

82. The Act authorizes the creation of buffer zones on the Joan G. Lovering Health Center's driveway, which because of its width would encompass well more than fifty feet of length of public sidewalks and ways.

83. The Joan G. Lovering Health Center has no door entrance on the public sidewalk. It sits on a rural plot of land with the doorway set extremely far back from the public sidewalks and ways, at the other end of a long driveway and parking lot.

84. No speech activities on the public sidewalks and ways outside the Joan G. Lovering Health Center in recent years have caused or could have caused a problem preventing access to its entrances, because the massive existing private property buffer between the entrance and the public sidewalk, and the private access between the parking lot and the entrance, already provide patients an ample buffer area.

85. Defendants Foster, Conway, and Town of Greenland are authorized to enforce the Act's buffer zones around the Joan G. Lovering Health Center.

86. Plaintiff Betty Buzzell regularly engages in peaceful sidewalk counseling and prayer on the public sidewalks and ways outside the Planned Parenthood at 8 Middle Street in Keene, NH, a.k.a. Keene Health Center (which is "a reproductive health care facility" within the definition of the Act, authorized to create the Act's buffer zones).

87. The Act authorizes the creation of buffer zones on and around the Keene Health Center.

88.  No speech activities on the public sidewalks and ways outside the Keene Health Center in recent years have caused or could have caused a problem preventing access to its entrances.

89.  Defendants Foster, McLaughlin, and the City of Keene are authorized to enforce the Act's buffer zones around the Keene Planned Parenthood.

90.  The peaceful sidewalk counseling of all the Plaintiffs regularly occurs on areas of the public sidewalks and ways that will be encompassed by buffer zones authorized by the Act.

91.  The Act and its enforcement and threatened enforcement by Defendants are actions taken under of color of state law.

92.  Plaintiffs desire to continue engaging in peaceful sidewalk counseling and leafleting in these public areas but fear prosecution under the Act if they continue to do so.

93.  The Act is imposing and will continue to impose irreparable harm upon Plaintiffs' free speech activities on the public sidewalk unless it is enjoined.

94.  Plaintiffs have no adequate remedy at law.

### FIRST CAUSE OF ACTION
### <u>Violation of the rights to Freedom of Speech and of the Press</u>
### <u>under the First Amendment to the U.S. Constitution</u>

95.  Plaintiffs reallege paragraphs 1–94 and incorporate them herein.

96.  The public ways and sidewalks that fall under the Act's provisions are traditional public fora.

97.  The Act is overbroad on its face and as applied because it prohibits speech and expressive activities of Plaintiffs and third parties not before the court in the restricted areas.

98.  The Act is overbroad on its face and as applied because it prohibits speech and expressive activities on any topic in front of businesses and other establishments that are unrelated to reproductive health care facilities yet within the restricted areas.

99.  The Act is overbroad on its face and as applied because it prohibits speech in areas outside of all reproductive health care facilities "where abortions are offered or performed."

100. The Act is overbroad on its face and as applied because it prohibits entering or remaining on a public way or sidewalk adjacent to a reproductive health facility.

101. The Act is overbroad on its face and as applied because it may restrict one from parking a vehicle bearing a pro-life message, such as on a bumper sticker, from remaining parked within the zone. Such a restriction is not narrowly tailored to any plausible interest.

102. Because the Act is an unconstitutionally overbroad restriction on expressive activity, the ordinance restricts more speech than necessary to achieve any governmental interest.

103. The Act is an unconstitutional content- and viewpoint-based restriction in that it was enacted and is applied so as to restrict pro-life speech, but permit speech in favor of abortion or concerning topics and speakers not disfavored by the state of New Hampshire.

104. The Act creates an impermissible risk of discriminatory enforcement against Plaintiffs because the State intends to restrict Plaintiffs' pro-life speech within the zones of a radius up to 25 feet around abortion clinics while at the same time permitting abortion clinic employees and volunteers to engage in pro-abortion speech, and permitting speech by persons with whom the State does not disagree religiously or politically.

105. The Act imposes an unconstitutional content- and viewpoint-based restriction in that it requires a private entity, pursuant to unbridled discretion, to determine what speech and speakers are restricted by the Act.

106. The Act discriminates on its face and as applied against Plaintiffs by prohibiting them from engaging in speech and other expressive activities in traditional public fora based solely upon the pro-life content and viewpoint of their speech.

107. The Act is an unconstitutional content- and viewpoint-based restriction in that it requires a governmental official, pursuant to unbridled discretion, to determine what speech and speakers are restricted by the Act.

108. The Act is an impermissible prior restraint on constitutionally protected speech because it restricts speech in advance of expression in the public way and sidewalk area outside

health care facilities and other businesses and establishments, but provides no criteria to guide decision-makers in determining what speech is permissible.

109. The Act imposes an impermissible prior restraint on the distribution of printed expression that is unconstitutional on its face and as applied because it contains no guidelines or criteria to guide decision-makers on what literature may permissibly be distributed.

110. The Act's ban on free speech activities in the public way and sidewalk area outside reproductive health care facilities imposes an unconstitutional restriction on constitutionally protected speech in traditional public fora.

111. No compelling, substantial, or even legitimate governmental interest exists to justify the Act's restrictions on speech in traditional public fora.

112. The Act is not the least restrictive means to accomplish any permissible purpose sought to be served by the State, and the Act restricts substantially more speech than necessary.

113. The Act is not narrowly tailored to the State's asserted interests in public health, safety, and welfare.

114. The Act does not leave open ample alternative channels of communications for Plaintiffs to engage in expressive activities.

115. Expressive speech methods that are not prohibited by the Act do not allow Plaintiffs to communicate their messages to their audiences.

116. Plaintiffs' effective communication of their messages requires personal approaches to people entering the reproductive health facilities, and the Act greatly hinders and in many circumstances completely forecloses this method of communication.

117. The Act on its face and as applied violates Plaintiffs' rights to freedom of speech and of the press under the First Amendment to the United States Constitution.

118. Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

**SECOND CAUSE OF ACTION**
<u>**Violation of substantive and procedural Due Process**</u>
<u>**of the Fourteenth Amendment to the United States Constitution**</u>
<u>**(and of the First Amendment as it relates to speech)**</u>

119. Plaintiffs reallege paragraphs 1–94 and incorporate them herein.

120. The Act impermissibly risks the violation of Plaintiffs' substantive and procedural due process rights by applying the Act contrary to its written terms by solely restricting speakers that are pro-life or with whom the City disagrees.

121. The Act is an unconstitutionally vague restriction on speech on its face and as applied because it fails to adequately advise, notify, or inform persons subject to prosecution under the Act of its requirements, including what subject matter of speech it prohibits.

122. The Act is an unconstitutionally vague restriction on speech on its face and as applied because it fails to define what constitutes "clinic escort services" for the purposes of what behavior is exempt from the Act.

123. The Act is an unconstitutionally vague restriction on its face and as applied because the Act purports to prohibit any person from "knowingly enter[ing] or remain[ing]" in the restricted zone, but the required signage purports to prohibit "congregating, patrolling, picketing, or demonstrating" in the zone.

124. The Act is an unconstitutionally vague restriction on its face and as applied because the terms "congregating, patrolling, picketing, or demonstrating" which must be displayed on the required signage are not defined.

125. The Act is an unconstitutionally vague restriction on its face and as applied because it fails to indicate whether a vehicle bearing a pro-life message, such as on a bumper sticker, parked in the buffer zone would violate the Act.

126. The Act is unconstitutionally vague because it lacks any standards or criteria to guide those charged with enforcing it and thus gives them unbridled discretion to determine what speech activities are, and are not, permissible within the zones created by the Act.

127. The Act is unconstitutionally vague because it lacks any standards or criteria and gives private entities unbridled discretion to impose speech zones under the Act.

128. The Act is an irrational and unreasonable policy, which imposes irrational and unreasonable restrictions on the exercise of Plaintiffs' constitutional rights.

129. The State enacted the Act to impermissibly and arbitrarily target pro-life Plaintiffs because of their speech against abortion.

130. The Act does not have a compelling, important, or even rational reason to prevent Plaintiffs from engaging in their panoply of speech and expressive activities.

131. The Act violates Plaintiffs' substantive and procedural due process rights on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution.

132. Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of the Equal Protection Clause
### of the Fourteenth Amendment to the U.S. Constitution

133. Plaintiffs reallege paragraphs 1–94 and incorporate them herein.

134. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons equally.

135. The Act impermissibly creates the risk that the State will apply the Act to Plaintiffs even though similarly situated individuals are allowed to engage in speech, including pro-abortion speech, in the same or similar locations.

136. Defendants explicitly exempted reproductive health care facility clinic escorts from the Act, allowing such individuals to engage in speech and expressive activities favorable to abortion, encouraging and compelling women to enter the abortion facilities and continue with the abortions, while prohibiting Plaintiffs from engaging in any expressive activity.

137. The Act treats Plaintiffs differently than similarly situated persons who do not have a pro-life message based on the content and viewpoint of Plaintiffs' speech, thereby suppressing the exercise of their constitutional rights.

138. The Act violates various fundamental rights of Plaintiffs, such as the rights of free speech, free assembly, and free exercise of religion.

139. When government regulations, such as the Act challenged herein, infringing on fundamental rights, discriminatory intent is presumed.

140. Defendants' intentionally discriminate against Plaintiffs by exempting clinic escorts from the provisions of the Act.

141. Defendants can offer no compelling, important, or even rational interest to justify prohibiting Plaintiffs' pro-life speech and expressive activities, while permitting similarly situated individuals to engage in speech on other topics in the public way and sidewalk areas restricted by the Act.

142. The Act is not the least restrictive means and is not narrowly tailored to accomplish any permissible purpose sought to be served by Defendants.

143. The Act constitutes a violation of Plaintiffs' right to equal protection on its face an as applied in violation of the Fourteenth Amendment to the United States Constitution.

144. Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### FOURTH CAUSE OF ACTION
### Violation of the Freedom of Speech guaranteed by
### Pt. 1, Art. 22 of the New Hampshire Constitution

145. Plaintiffs reallege paragraphs 1–94 and incorporate them herein.

146. The right to freedom of speech guaranteed by Pt. 1, Art. 22 of the New Hampshire Constitution provides greater protection than the First Amendment to the United States Constitution.

147. The Act is overbroad on its face and as applied because a substantial number of its applications are unconstitutional.

148. The Act is overbroad on its face and as applied because it prohibits speech and expressive activities of Plaintiffs and third parties not before the court in the restricted areas.

149. The Act is overbroad on its face and as applied because it prohibits speech and expressive activities on any topic in front of businesses and other establishments that are unrelated to reproductive health care facilities yet within the restricted areas.

150. The Act is overbroad on its face and as applied because it prohibits speech in areas outside of all reproductive health care facilities "where abortions are offered or performed."

151. The Act is overbroad on its face and as applied because it prohibits entering or remaining on a public way or sidewalk adjacent to a reproductive health facility.

152. The Act is overbroad on its face and as applied because it may restrict one from parking a vehicle bearing a pro-life message, such as on a bumper sticker, from remaining parked within the zone. Such a restriction is not narrowly tailored to any plausible interest.

153. Because the Act is an unconstitutionally overbroad restriction on expressive activity, the ordinance restricts more speech than necessary to achieve any governmental interest.

154. The Act is invalid on its face because no set of circumstances exists under which the Act would be valid.

155. The Act is an unconstitutional content- and viewpoint-based restriction in that it was enacted and is applied so as to restrict pro-life speech, but permit speech in favor of abortion or concerning topics and speakers not disfavored by the state of New Hampshire.

156. The Act creates an impermissible risk of discriminatory enforcement against Plaintiffs because the State intends to restrict Plaintiffs' pro-life speech within the zones of a radius up to 25 feet around abortion clinics while at the same time permitting abortion clinic employees and volunteer to engage in pro-abortion speech, and permitting speech by persons with whom the State does not disagree religiously or politically.

19

157. The Act imposes an unconstitutional content- and viewpoint-based restriction in that it requires a private entity, pursuant to unbridled discretion, to determine what speech and speakers are restricted by the Act.

158. The Act discriminates on its face and as applied against Plaintiffs by prohibiting them from engaging in speech and other expressive activities in traditional public fora based solely upon the pro-life content and viewpoint of their speech.

159. The Act is an unconstitutional content- and viewpoint-based restriction in that it requires a governmental official, pursuant to unbridled discretion, to determine what speech and speakers are restricted by the Act.

160. The Act is an impermissible prior restraint on constitutionally protected speech because it restricts speech in advance of expression in the public way and sidewalk area outside health care facilities and other businesses and establishments, but provides no criteria to guide decision-makers in determining what speech is permissible.

161. The Act imposes an impermissible prior restraint on the distribution of printed expression that is unconstitutional on its face and as applied because it contains no guidelines or criteria to guide decision-makers on what literature may permissibly be distributed.

162. The Act's ban on free speech activities in the public way and sidewalk area outside reproductive health care facilities imposes an unconstitutional restriction on constitutionally protected speech in traditional public fora.

163. No compelling, significant, or even legitimate governmental interest exists to justify the Act's restrictions on speech in traditional public fora.

164. The Act is not the least restrictive means to accomplish any permissible purpose sought to be served by the State, and the Act restricts substantially more speech than necessary.

165. The Act is not narrowly tailored to the State's asserted interests in public health, safety, and welfare.

166. The Act does not leave open ample alternative channels of communications for Plaintiffs to engage in expressive activities.

167. Expressive speech methods that are not prohibited by the Act do not allow Plaintiffs to communicate their messages to their audiences.

168. Plaintiffs' effective communication of their messages requires personal approaches to people entering the reproductive health facilities, and the Act greatly hinders and in many circumstances completely forecloses this method of communication.

169. The Act on its face and as applied violates Plaintiffs' rights to freedom of speech and of the press under Part 1, Article 22 of the New Hampshire Constitution.

170. Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

**FIFTH CAUSE OF ACTION**
**Violation of the right of Equal Protection Guaranteed by**
**Pt. 1, Arts. 2 & 12 of the New Hampshire Constitution**

171. Plaintiffs reallege paragraphs 1–94 and incorporate them herein.

172. The Act impermissibly creates the risk that the State will apply the Act to Plaintiffs even though similarly situated individuals are allowed to engage in speech, including pro-abortion speech, in the same or similar locations.

173. Defendants explicitly exempted reproductive health care facility clinic escorts from the Act, allowing such individuals to engage in speech and expressive activities favorable to abortion, encouraging and compelling women to enter the abortion facilities and continue with the abortions, while prohibiting Plaintiffs from engaging in any expressive activity.

174. The Act treats Plaintiffs differently than similarly situated persons who do not have a pro-life message based on the content and viewpoint of Plaintiffs' speech, thereby suppressing the exercise of their constitutional rights.

175. The Act violates various fundamental rights of Plaintiffs, such as the rights of free speech, free assembly, and free exercise of religion.

176. When government regulations, such as the Act challenged herein, infringing on fundamental rights, discriminatory intent is presumed.

177. Defendants' intentionally discriminate against Plaintiffs by exempting clinic escorts from the provisions of the Act.

178. Defendants can offer no compelling, important, or even rational interest to justify prohibiting Plaintiffs' pro-life speech and expressive activities, while permitting similarly situated individuals to engage in speech on other topics in the public way and sidewalk areas restricted by the Act.

179. The Act is not the least restrictive means and is not narrowly tailored to accomplish any permissible purpose sought to be served by Defendants.

180. The Act constitutes a violation of Plaintiffs' right to equal protection on its face an as applied in violation of Part 1, Articles 2 and 12 of the New Hampshire Constitution.

181. Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Assume jurisdiction over this action;

B.  Declare the Act, SB 319-FN, "An Act Relative to Access to Reproductive Health Care Facilities," unconstitutional on its face because it violates the rights of Plaintiffs and others not before the court to the freedoms of speech and of the press, and the rights of due process and equal protection, which are guaranteed to Plaintiffs and others under the United States Constitution;

C.  Declare the Act unconstitutional as applied to the speech and expressive activities of Plaintiffs, described in this Verified Complaint, because they violate Plaintiffs' right to freedom of speech and of the press, and the rights to due process and equal protection, which are guaranteed to Plaintiffs and others under the United States Constitution;

D.  Grant to Plaintiffs preliminary and permanent injunctive relief against the Act o its face with respect to Plaintiffs and others not before the court and as applied to Plaintiffs;

E.  Grant to Plaintiffs an award of nominal damages;

22

F.   Grant to Plaintiff an award for their costs of litigation, including reasonable attorneys' fees and costs; and

G.   Grant such other and further relief as this Court deems just and proper.

Plaintiffs demand a jury for all issues so triable.


Respectfully submitted this 7th day of July, 2014.


  *s/ Michael J. Tierney*

MICHAEL J. TIERNEY
NH Bar No. 17173
WADLEIGH, STARR & PETERS, PLLC
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 626-4808—facsimile
mtierney@wadleighlaw.com

MICHAEL J. DEPRIMO*
CT Bar. No. 402211
778 Choate Ave.
Hamden, CT 06518
(203) 893-9393
michaeldeprimo@gmail.com

MARK L. RIENZI*
DC Bar No. ***
COLUMBUS SCHOOL OF LAW
CATHOLIC UNIVERSITY OF AMERICA
3600 John McCormack Rd. NE
Washington, DC 20064
(202) 319-4970
(202) 319-4459—fascimile
rienzi@law.edu

STEVEN H. ADEN*
DC Bar No. 46777
MATTHEW S. BOWMAN*
DC Bar No. 993261
ALLIANCE DEFENDING FREEDOM
801 G Street, NW, Suite 509
Washington, D.C.  20001
(202) 393-8690
(202) 347-3622—facsimile
saden@alliancedefendingfreedom.org
mbowman@alliancedefendingfreedom.org

ELISSA GRAVES*
AZ Bar No. 030505
ALLIANCE DEFENDING FREEDOM
15100 N 90th Street
Scottsdale, AZ 85260-2901
(480) 444-0020
(480) 444-0028—facsimile
egraves@alliancedefendingfreedom.org


ATTORNEYS FOR PLAINTIFFS

*Pro hac vice motions forthcoming.*

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 7, 2014

  *s/ Sister Mary Rose Reddy, DMML*
SISTER MARY ROSE REDDY

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 7, 2014

  *s/ Sue Clifton*_____
SUE CLIFTON

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on July 7, 2014

_s/ Joan Espinola_____

JOAN ESPINOLA

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.


Executed on July 7, 2014


   *s/ Terry Barnum*
TERRY BARNUM

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 7, 2014

_____*s/ Betty Buzzell*_____
BETTY BUZZELL

**VERIFICATION PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 7, 2014

_s/ Jennifer Robidoux_____
JENNIFER ROBIDOUX

G:\D52000\52098\pleadings\NH Buffer Zone Complaint -FINAL- Filing Version.docx