UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mary Rose Reddy et al.

     v.                      Civil No. 14-cv-299-JL
                                     Opinion No. 2016 DNH 074P

Joseph Foster et al.

## OPINION AND ORDER

This civil rights action implicates a party's standing to challenge a recently-enacted law prior to its enforcement. The plaintiffs allege that they engage in peaceful expressive activities[1] outside of clinics that provide abortion services in New Hampshire. A recently-enacted New Hampshire law permits such clinics to create so-called "buffer zones" around the clinic entrances. N.H. Rev. Stat. Ann. §§ 132:37-40. Plaintiffs allege that this law violates their rights to freedom of speech, freedom of the press, due process, and equal protection under the United States and New Hampshire Constitutions. It does so, they argue, by unlawfully restricting their ability to engage in peaceful prayer,

---

[1] As explained infra Part I, in the context of a motion to dismiss for lack of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), the court "treat[s] all well-pleaded facts as true and indulg[es] all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).

leafleting, and sidewalk counseling in those quintessential public fora, the city street and sidewalk.

The Attorney General of the State of New Hampshire, a defendant in his official capacity, moved to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the plaintiffs lack standing to bring it.  The Attorney General contends that the plaintiffs failed to allege any actual injury because the statute in question has not been enforced against them and, as written, cannot be enforced against them absent the demarcation of a buffer zone -- a condition precedent that has not been fulfilled even now, almost 21 months after the law's effective date.  This absence of any injury means the plaintiffs lack standing, the Attorney General concludes, and accordingly strips this court of subject-matter jurisdiction over the action.  See U.S. Const. art. III, § 2, cl. 1.

Having already answered the complaint, various of the municipal defendants[2] move for judgment on the pleadings, see Fed. R. Civ. P. 12(c), challenging the court's subject-matter

---

[2] The Counties of Cheshire, Merrimack, Hillsborough, and Rockingham, the Cities of Concord and Keene, and the Town of Greenland, have so moved.  The City of Manchester has not weighed in.

jurisdiction on the same grounds as the Attorney General.  They also contend that the plaintiffs fail to state a claim against them, see id. Rule 12(b)(6), and raise the spectre of unjoined but indispensable parties, see id. Rules 12(b)(7), 19.

After hearing oral argument and considering the parties' submissions, the court grants defendants' motions to dismiss because plaintiffs' suit is premature.  Plaintiffs have not demonstrated that they suffered any cognizable injury attributable to the defendants or that threatened enforcement of the statute chilled their speech.  Lacking subject-matter jurisdiction over this action, the court accordingly dismisses the plaintiffs' claims without prejudice.

## I.  Applicable legal standard

"[F]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute . . . ." United States v. Coloian, 480 F.3d 47, 50 (1st Cir. 2007) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 7

Wall. 506, 514 (1869)).  When the court's jurisdiction is challenged, as it is here, "the burden lies with the plaintiff[s], as the part[ies] invoking the court's jurisdiction, to establish that it extends to [their] claims." Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) (citing Kokkonen, 511 U.S. at 377).

In evaluating a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), this court must "accept as true all well-pleaded factual averments in the plaintiff[s'] complaint and indulge all reasonable inferences therefrom in [their] favor." Katz, 672 F.3d at 70.  Unlike in the Rule 12(b)(6) context, where doing so would require conversion of this motion into one for summary judgment, see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008), in the Rule 12(b)(1) context, the court may "consider whatever evidence has been submitted, such as the . . . exhibits submitted in this case." Aversa, 99 F.3d at 1210.

## II.  **Background**

### A.    **The Act**

The law challenged here, entitled "An Act Relative to Access to Reproductive Health Care Facilities" and codified at N.H. Rev. Stat. Ann. § 132:37-40, went into effect on July 10, 2014.  The Act provides that, with limited exceptions:

> No person shall knowingly enter or remain on a public
> way or sidewalk adjacent to a reproductive health care
> facility within a radius up to 25 feet of any portion
> of an entrance, exit, or driveway of a reproductive
> health care facility.

N.H. Rev. Stat. Ann. § 132:38, I.  Under the Act, a

"reproductive health care facility" is "a place, other than

within or upon the grounds of a hospital, where abortions are

offered or performed."  Id. § 132:37, I.  Importantly, the Act

requires that such facilities "shall clearly demarcate the zone

authorized in paragraph I and post such zone with signage," id.

§ 132:38, II, and that, prior to doing so, they "shall consult

with local law enforcement and those local authorities with

responsibilities specific to the approval of locations and size

of the signs to ensure compliance with local ordinances," id.

§ 132:38, III.

Section 132:39 contains the Act's enforcement mechanisms,

but provides that they "shall not apply unless the signage

authorized in RSA 132:38, II was in place at the time of the

alleged violation."  Id. § 132:39, III.  Once that signage is in

place, "a police officer or any law enforcement officer shall

issue one written warning to an individual" who violates

§ 132:38, I, "[p]rior to issuing a citation."  Id. § 132:39, I.

"If the individual fails to comply after one warning, such

individual will be given a citation," id., which carries "a

minimum fine of $100," id. § 132:39, II.  The Act also
authorizes the New Hampshire Attorney General or appropriate
County Attorney to "bring an action for injunctive relief to
prevent further violations."  Id.

**B.  The plaintiffs**

The plaintiffs in this case are individuals who engage in
expressive activities, such as prayer, leafleting, sidewalk
counseling, and advocacy outside of four New Hampshire clinics
that provide abortion services -- specifically, those in
Manchester, Concord, Keene, and Greenland.  Compl. ¶ 5.  For
example, some of the plaintiffs engage in sidewalk counseling
outside of Planned Parenthood's clinic in Manchester.  There,
they attempt to engage in calm conversations with those entering
and leaving the clinic, hand out rosaries and cards, or simply
hold up signs.  Compl. ¶¶ 61-62, 65, 67.  Others pray -- aloud
or silently -- on the sidewalks outside that location.  Compl.
¶¶ 64, 67.

Still others of the plaintiffs engage in similar activities
outside of the Concord Feminist Health Center, the Joan G.
Lovering Health Center in Greenland, and the Planned Parenthood

clinic in Keene.[3]  Compl. ¶¶ 75, 80-81, 86.  The parties do not dispute that the plaintiffs have engaged in and, since the filing of this lawsuit, continue to engage in these and similar activities near these locations.

### C.  Procedural history

Plaintiffs filed this action on July 7, 2014, three days before the Act went into effect, and shortly after the Supreme Court struck down Massachusetts's buffer zone statute in McCullen v. Coakley, 134 S. Ct. 2518 (2014).  As did the plaintiffs in McCullen, they seek to enjoin enforcement of the Act, alleging that it violates their rights under the First and Fourteenth Amendments, both on its face and as applied to them. See id. at 2528.  They immediately moved for a preliminary injunction and, until that motion could be decided, a temporary restraining order.  After a discussion with counsel, the court granted plaintiffs' motion for a temporary restraining order against the City of Concord and the Town of Derry, and denied it

---

[3] Plaintiffs originally alleged that some of their number engaged in similar activities outside of the Planned Parenthood in Derry.  Compl. ¶ 68.  The parties have since stipulated that the Derry Planned Parenthood clinic does not offer abortion services, and on those grounds, the plaintiffs voluntarily dismissed the Town of Derry from this action.  See Notice of Voluntary Dismissal of the Town of Derry (document no. 48).

as moot against the other defendants, who agreed to abstain from enforcing the Act until the court rendered a decision on the motion for a preliminary injunction. Order of July 9, 2014 (document no. 9) at 2-4.

The parties agreed to a stay of the case shortly thereafter, in part to allow the legislature to reconsider the Act in light of the Supreme Court's decision in McCullen. See Order of July 23, 2014 (document no. 49). As a condition of the stay, the defendants agreed not to enforce the Act against the plaintiffs and to notify the plaintiffs if they learned that a clinic intended to post the signage that is a prerequisite to enforcement under § 132:38, II. Id. at 3-4. In light of the agreed-upon stay, the court administratively denied the parties' various pending motions -- for preliminary injunction (document no. 2), to stay the case (document no. 25), and to dismiss the case (document no. 26) -- though allowed for those motions to be reinstated upon the request of any party. Order of March 19, 2015 (document no. 57).

The parties diligently filed status reports during the course of the stay. The New Hampshire legislature did reconsider the Act during the 2015 legislative session; the House voted to repeal it, but the repeal bill was ultimately tabled by the Senate. See Motion to Lift Stay and Modify July

8

23, 2014 Order (document no. 64) ¶¶ 1-2.  In August 2015, the
defendants asked the court to lift the stay.  See id.
Plaintiffs agreed, with the understanding that certain
provisions of the stay would remain in effect -- specifically,
that the defendants would not enforce the Act against the
plaintiffs and would notify the plaintiffs and the court should
they learn that any clinic intended to post the pre-enforcement
signage required by § 132:38, II.  Id. ¶ 4.  The court granted
that request, see Order of August 27, 2015, the Attorney General
renewed his motion to dismiss the complaint, see document no.
63, and various of the municipal defendants moved for judgment
on the pleadings, see document nos. 75, 77.  The court held oral
argument on defendants' motions on February 16, 2016.[4]

## III. **Analysis**

Resolution of this motion turns on whether the plaintiffs
have suffered an injury sufficient to give them standing to seek
relief.  Article III of the United States Constitution "limits
the jurisdiction of federal courts to 'Cases' and

---

[4] At oral argument, the court concluded that its analysis
would benefit from additional argument applying Supreme Court
and Court of Appeals precedent that had previously gone
unaddressed.  Order of February 17, 2016 (document no. 79).
Pursuant to that order, those parties submitted supplemental
memoranda.  See documents nos. 80, 81.

'Controversies.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992) (quoting U.S. Const. art. III, § 2, cl. 1). "[W]hether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Article III . . . is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). To answer that question in the affirmative "requires that the party invoking federal jurisdiction have standing -- the 'personal interest that must exist at the commencement of the litigation.'" Davis v. F.E.C., 554 U.S. 724, 732 (2008) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)).

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Id., 554 U.S. at 734 (internal quotations omitted). "The existence of federal jurisdiction . . . depends on the facts as they exist when the complaint is filed." Lujan, 504 U.S. 555, 571 n.4, (quoting Newman–Green, Inc. v. Alfonzo–Larrain, 490 U.S. 826, 830 (1989)). To meet this burden, a plaintiff must show:

> (1) it has suffered an injury in fact that is (a)
> concrete and particularized and (b) actual or
> imminent, not conjectural or hypothetical; (2) the
> injury is fairly traceable to the challenged action of

the defendant; and (3) it is likely, as opposed to
merely speculative, that the injury will be redressed
by a favorable decision.

Friends of the Earth, 528 U.S. at 180-81.  These "constitutional

requirements apply with equal force in every case." Nat'l Org.

for Marriage v. McKee, 649 F.3d 34, 46 (1st Cir. 2011).

Defendants contend, and the court ultimately agrees, that the

plaintiffs in this action fail to make the first of these

showings.  Plaintiffs challenge the Act as unconstitutional both

on its face and as applied to the plaintiffs in this action.  As

discussed in more detail below, the plaintiffs lack standing to

make either challenge to the Act.  In the absence of a showing

by the plaintiffs that they have suffered an injury in fact,

actual or imminent, resulting from the actions of the

defendants, the court grants defendants' motions to dismiss

without prejudice.

### A.    Facial challenge

As discussed supra, to establish a case and controversy,

plaintiffs must demonstrate that their injury is "concrete and

particularized and actual or imminent, not conjectural or

hypothetical." Friends of the Earth, 528 U.S. at 180-81.

"'Allegations of possible future injury' are not sufficient" to

constitute injury in fact.  Clapper v. Amnesty Int'l. USA, 133

S. Ct. 1138, 1147 (2013) (quoting Whitmore v. Arkansas, 495 U.S.

149, 158 (1990)).  The Supreme Court has, however, "given a special gloss" to this requirement so as to allow, under certain circumstances, facial challenges to laws that burden expression protected by the First Amendment.  Van Wagner Boston LLC v. Davey, 770 F.3d 33, 37 (1st Cir. 2014).

The plaintiffs assert standing to challenge the Act as invalid on its face under two theories particular to this context.  As discussed more fully below, plaintiffs lack standing under either of them.  First, they claim standing to bring a pre-enforcement facial challenge because a credible threat that the Act will be enforced against them causes them to self-censor their speech, thus unconstitutionally chilling said speech.  They lack standing under this theory because the absence of any buffer zone -- the creation of which is a necessary but unfulfilled condition for enforcement of the Act -- negates the imminence of the risk that the Act will be enforced against the plaintiffs.

Second, plaintiffs claim they have standing because they have pled that the Act unconstitutionally delegates unbridled discretion to the clinics to demarcate buffer zones.  They draw this argument from the holdings of prior restraint cases, specifically Van Wagner, 770 F.3d 33 (1st Cir. 2014), but fail to supply convincing support that having alleged undue

discretion in the complaint creates standing outside of the prior restraint context.  Accordingly, plaintiffs lack standing to challenge the Act as facially unconstitutional.

### 1.   Threat of enforcement

The plaintiffs' first claim mounts a pre-enforcement First Amendment challenge.[5]  "Pre-enforcement First Amendment challenges . . . occupy a somewhat unique place in Article III standing jurisprudence." Nat'l Org. for Marriage, 649 F.3d at 47.  This is because, as the parties acknowledge, "the government has not yet applied the allegedly unconstitutional law to the plaintiff, and thus there is no tangible injury. However, in these circumstances the Supreme Court has recognized 'self-censorship' as 'a harm that can be realized even without an actual prosecution.'" Id. (quoting Virginia v. Am.

---

[5] Though this discussion necessarily contemplates how the statute could be applied to the plaintiffs, the cases that delineate the contours of pre-enforcement challenges such as this one, in the First Amendment context, address such challenges as facial.  See, e.g., Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2340 n.3 (2014) (plaintiffs' as-applied claims "better read as facial objections"); Clapper, 133 S. Ct. at 1146 (addressing a facial challenge); New Hampshire Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 10 (1st Cir. 1996) (concluding that plaintiff had "standing to mount a pre-enforcement facial challenge to the statutory cap.").  This court accordingly does likewise.

Booksellers Ass'n, 484 U.S. 383, 393 (1988)).  As the First

Circuit Court of Appeals has further explained:

> [I]n challenges to a state statute under the First
> Amendment[,] "two types of injuries may confer Article
> III standing without necessitating that the
> challenger actually undergo a criminal prosecution.  The first is
> when 'the plaintiff has alleged an intention to engage
> in a course of conduct arguably affected with a
> constitutional interest, but proscribed by [the]
> statute, and there exists a credible threat of
> prosecution.'  The second type of injury is when a
> plaintiff 'is chilled from exercising her right to
> free expression or forgoes expression in order to
> avoid enforcement consequences.'"

Blum v. Holder, 744 F.3d 790, 796 (1st Cir. 2014) cert. denied,

135 S. Ct. 477 (2014) (quoting Mangual v. Rotger-Sabat, 317 F.3d

45, 56-57 (1st Cir. 2003)).  In both of these situations, the

plaintiff's standing "hinge[s] on the existence of a credible

threat that the challenged law will be enforced."  N.H. Right to

Life, 99 F.3d at 14.  "If such a threat exists, then it poses a

classic dilemma for an affected party:  either to engage in the

expressive activity, thus courting prosecution, or to succumb to

the threat, thus forgoing free expression.  Either injury is

justiciable."  Id.  Absent such a threat, however, the

plaintiff's "[a]llegations of a subjective 'chill' are not an

adequate substitute for a claim of specific present objective

harm or a threat of specific future harm," and thus do not

amount to an injury that confers standing.  Laird v. Tatum, 408

U.S. 1, 13-14 (1972).  Thus, the plaintiffs' standing to bring

this pre-enforcement challenge turns on whether there is a credible threat that the Act will be enforced against them.

"An allegation of future injury may suffice" to create standing "if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" SBA List, 134 S. Ct. at 2341 (quoting Clapper, 133 S. Ct. at 1150 n.5). In Clapper, individuals in the United States who communicated internationally with others who, in turn, might have been subject to surveillance under the Foreign Intelligence Surveillance Act of 1978 (FISA), 50 U.S.C. § 1881a, challenged that statute as violative of their rights under the First Amendment. 133 S. Ct. at 1142. The Supreme Court concluded the plaintiffs' "theory of standing . . . relie[d] on a highly attenuated chain of possibilities," including speculation as to whether their contacts would be subject to collection of intelligence under § 1881a, whether the Foreign Intelligence Surveillance Court would authorize surveillance of those contacts' communications under the same, and whether the plaintiffs' own communications would be intercepted if the Government succeeded in acquiring those contacts' communications. Id. at 1148-50. Because of that attenuation, the Court concluded that the plaintiffs "[did] not face a threat of certainly impending interception" of their communications

under § 1881a, and, thus, any harm they incurred as a result of their fear of such interception failed to create standing.  Id. at 1152.

The Court came to the opposite conclusion under the facts of SBA List.  There, an Ohio statute prohibited "certain 'false statement[s]' 'during the course of any campaign for nomination or election to public office or office of a political party.'" 134 S. Ct. at 2338 (quoting Ohio Rev. Code. Ann. § 3517.21(B)). The Court found that an advocacy organization, the Susan B. Anthony List, had standing to challenge the statute even though it had not yet been enforced against it because (1) the plaintiff had "alleged an intention to engage in a course of conduct arguably affected with a constitutional interest" by pleading an intention to continue engaging in political speech; (2) the plaintiff's "intended future conduct [was] arguably proscribed by the statute they wish[ed] to challenge" in the sense that some of that speech, in the eyes of another, may be perceived to be false; and (3) "the threat of future enforcement of the false statement statute [was] substantial," particularly in light of a prior complaint that led to enforcement against that plaintiff.  Id. at 2343-46.

As in SBA List, the plaintiffs here have alleged an intention to continue their expressive activities -- such as

16

sidewalk counseling, prayer, and carrying signs -- outside

clinics in New Hampshire.  This conduct would arguably be

proscribed by the Act if it took place within a demarcated

buffer zone.  See N.H. Rev. Stat. Ann. § 132:38, I.  Plaintiffs

then might be warned in writing to cease and, if they failed to

do so, fined.[6]  See N.H. Rev. Stat. Ann. § 132:39.  The question

before the court, then, is whether this threat of a perceived

future injury is "certainly impending," or at the very least,

"substantial."  SBA List, 134 S. Ct. at 2341; see also Clapper,

133 S. Ct. at 1155; Blum, 744 F.3d at 799 (observing that the

"'substantial risk' of harm standard that the Court has applied

---

[6] Plaintiffs contend that enforcement does not require
establishment of a buffer zone because the statute itself
"established" 25-foot buffer zones.  This reading of the Act
misconstrues its plain language.  See United States v. Howe, 736
F.3d 1, 3 (1st Cir. 2013) ("A court interpreting New Hampshire
law must 'first look to the language of the statute itself, and,
if possible, construe that language according to its plain and
ordinary meaning.'" (quoting State v. Dor, 165 N.H. 198, 200
(2013))).  By its plain language, the Act allows the creation of
buffer zones of less than 25 feet.  N.H. Rev. Stat. Ann.
§ 132:38, I.  The Acts describes such zones not as "created" or
"established," but "authorized."  Id. § 132:38, II; see Dor, 165
N.H. at 200 ("We do not read words or phrases in isolation, but
in the context of the entire statutory scheme.").  Finally, the
Act requires the posting of sign informing the public that there
is to be "No Congregating, Patrolling, Picketing, or
Demonstrating Between Signs" before the enforcement mechanisms
can be engaged.  N.H. Rev. Stat. Ann. §§ 132:38, II and 132:39,
III.  Considering these sections together, the court cannot
conclude that the Act created 25-foot zones around all clinics
upon going into effect.

in some cases" is "potentially more lenient" than the "certainly

impending" standard invoked in Clapper).  The court is not

convinced that it is.

What differentiates this case from the circumstances under

which pre-enforcement challenges were brought in SBA List and

N.H. Right to Life is the requisite condition precedents to

enforcement that have not been met.  Before the Act can be

enforced -- that is, before any warning or citation may be

issued for violation of the Act -- one of the clinics must

demarcate a zone.  N.H. Rev. Stat. Ann. § 132:39, I.  Both (a)

the decision to draw a zone and (b) the specific boundaries of

such a zone depend on the choices and actions of independent

decisionmakers.  Clapper, 133 S. Ct. at 1149-50 ("[W]e have been

reluctant to endorse standing theories that require guesswork as

to how independent decisionmakers will exercise their

judgment.").  Once a clinic has demarcated a zone, the Act still

cannot be enforced until the clinic posts the appropriate

signage.  N.H. Rev. Stat. Ann. §§ 132:38, II and 132:39, I.

These signs serve as a notification to those who gather outside

of the clinics in question -- such as the plaintiffs in this

case -- that the Act may be enforced.  As the defendants argue,[7]

---

[7] In evaluating the risk of enforcement, "[p]articular
weight must be given to the Government disavowal of any

the Act cannot be enforced until these conditions are met.
Absent that possibility, the court cannot conclude that there is
a "substantial risk," let alone a "credible threat," that the
Act will be enforced against the plaintiffs so as to give them
standing.  And as of yet, no clinic has drawn a zone of any
size, be it 25 feet or less, or posted the signage required
before the Act can be enforced.[8]

Importantly, the conclusion that conditions precedent for
enforcement have not been met at this juncture does not leave
plaintiffs without a meaningful opportunity for relief.  Once a

_____

intention to prosecute on the basis of the Government's own
interpretation of the statute and its rejection of plaintiffs'
interpretation as unreasonable." Blum, 744 F.3d at 798.  Though
the circumstances here differ slightly from those in Blum, the
result is much the same.  There, the Government "affirmatively
represented that it does not intend to prosecute [the
plaintiffs'] conduct because it does not think it is prohibited
by the statute." Id.  Here, the Attorney General has made clear
that he disavows prosecution in the absence of a demarcated
zone.  See Attorney General's Supp. Mem. (document no. 81) at 5-
6.  Though the Attorney General characterizes this as an
effective disavowal of enforcement, given the present
circumstances -- which, under "the Government's own
interpretation" of the Act, render enforcement impossible -- it
maintains that the Act may be enforced once a buffer zone has
been drawn, depending on the characteristics of that zone.

[8] While there is no evidence in the record that the third
and fourth requirements -- consultation with local law
enforcement and the land use code enforcement authorities --
have been undertaken, it would be inaccurate to say that the
parties have so stipulated.

zone is in place, they and others in their position would still
have an opportunity to seek injunctive relief before the court
adjudicated the merits of their challenge.[9]  At that time, the
court would have before it sufficient factual developments to
conduct a proper McCullen type of review.  For example, there
would be a record as to why such a zone was drawn and what
circumstances prompted its creation.  It would, hopefully, also
reflect the considerations undertaken by the clinic before
drawing the zone.  Finally, the parties and the court would also
know the size of the zone, whether a full 25 feet as the Act
permits, or a mere six feet, as the Act also permits.  Finally,
there would be a record as to whether any warnings or citations
had issued -- that is, whether the Act had been enforced.  While

---

[9] That the plaintiffs in this case obtained a temporary
restraining order against enforcement of the Act shortly after
filing suit, see Order of July 9, 2014 (document no. 9)
illustrates the availability of this relief.  The court's effort
to resolve the standing issue in a manner satisfactory to all
parties, and to avoid the elevation of form over substance while
fully respecting applicable jurisdictional requirements, does
likewise.  To that end, the court suggested an agreed-to
disposition:  dismissal of the case, without prejudice, for lack
of standing, followed by an administrative closing of the case,
permitting the plaintiffs to re-initiate the case by motion, on
an expedited basis, if and when any clinic demarcated a buffer
zone.  The parties were unable to agree to such a resolution,
however, based inter alia on a dispute over potential
prevailing-party fee-shifting for the pre-dismissal period.  See
42 U.S.C. § 1988.

enforcement is clearly not a prerequisite to standing in a First
Amendment challenge, SBA List, 134 S. Ct. at 2342, this more
developed factual record would provide the court a more
concrete, far less hypothetical framework within which to
analyze the constitutionality of the Act.  Such a framework
simply does not exist under these circumstances, where no zone
of any size -- whether 25 feet or less -- has been drawn.

Plaintiffs shoulder the burden of demonstrating standing.
Katz, 672 F.3d at 71.  They offer three arguments to that end.
The court finds none of them persuasive.

First, plaintiffs equate a threat that a zone will be
demarcated with a threat that the Act will be enforced.
Specifically, they claim injury in having self-censored their
speech to avoid the possibility that one of the clinics might
demarcate a buffer zone, which would lead to possible
enforcement of the Act.  It is true that the Act imposes little
impediment to a zone's creation.[10]  It requires only that

---

[10] Taking the contrary position at oral argument (albeit
without support in the language of the Act), the Attorney
General contended that the imposed obligation to "consult with
local law enforcement" requires the clinics to obtain approval
from local authorities before posting the signs.  At oral
argument, counsel for the remaining defendants -- the very
municipalities that would provide such local approvals --
affirmatively disavowed such an interpretation.

"[p]rior to posting the signage . . . a reproductive health care facility shall consult with local law enforcement and those local authorities with responsibilities specific to approval of locations and size of the signs to ensure compliance with all local ordinances." N.H. Rev. Stat. Ann. § 132:38, III.  Any such consultation could be a brief affair, as plaintiffs point out, leading to posted signs within hours -- if not minutes -- of any perceived misstep by the plaintiffs.  The potential proximity between a clinic's decision to demarcate a zone and actual demarcation does not negate the fact that a zone must still be drawn -- and the physical manifestations of the zone, the signs, put into place -- before the Act can be enforced.

---

The Attorney General bases this interpretation on language in the Act's legislative history.  As the Attorney General correctly observes, "[w]hen interpreting state law, a federal court employs the method and approach announced by the state's highest court." Cahoon v. Shelton, 647 F.3d 18, 22 (1st Cir. 2011).  As mentioned supra, in undertaking that task, the Supreme Court of New Hampshire "first look[s] to the language of the statute itself, and, if possible, construe[s] that language according to its plain and ordinary meaning." Dor, 165 N.H. at 200.  Neither of the cases upon which the Attorney General balances this argument compels this court go beyond the plain language and read the statute's legislative history into the statute itself.  Id. ("We will not consider what the legislature might have said or add language that the legislature did not see fit to include."); cf. State v. Paul, 167 N.H. 39, 42 (2014) (considering, but not importing limitations from, session laws); State v. Cartier, 133 N.H. 217, 222-23 (1990) (legislature established schedules of controlled drugs in session laws by incorporation of federal classifications).

That these preconditions cannot be satisfied without any notice to the plaintiffs (in the form of those signs) or merely on a government official's whim further distances the decision to demarcate from the Act's enforcement.[11]

It is not, then, that plaintiffs self-censor because they fear <u>receiving</u> a <u>warning</u> or <u>citation</u> for their activities. Rather, they fear the <u>creation</u> <u>of</u> <u>the</u> <u>conditions</u> <u>under</u> <u>which</u> a warning or citation might be issued.  So long as those conditions are absent, though, plaintiffs' allegations are "of a subjective 'chill'," which "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird, 408 U.S. at 13-14.  In an effort to render the risk of enforcement more imminent, plaintiffs cite statements made by representatives of certain clinics, which plaintiffs characterize as specific threats to demarcate zones "quickly" if plaintiffs engage in speech of which they

---

[11] Admittedly, the lack of any restrictions on, or conditional criteria for, the consultation/demarcation/signage requirements means that, conceivably, a clinic could establish a maximum size buffer zone (that is, a zone with a 25-foot radius) in a very short amount of time for any reason or for no reason at all.  In fact, the Attorney General and counsel for the defendant municipalities all but conceded as much at oral argument, with the possible exception of the Attorney General's curious suggestion that the consultation provision also requires local police approval -- a position that no other defendant supported.  <u>See</u> <u>supra</u> n. 9.

disapprove.[12]  See Plaintiffs' Obj. (document no. 65-1) at 9-10, 14; see also document nos. 39, 40, 65-2.  Even drawing inferences in the plaintiffs' favor, it does not appear to the court that those statements support such an interpretation.[13] Even if they did, self-censorship under a fear that the clinics may decide to demarcate a zone and post the requisite signs if the plaintiffs engage in some unspecified expression is not injury sufficient to create standing.  Cf. Clapper, 133 S. Ct. at 1152 (absent a threat of certainly impending enforcement, costs incurred by plaintiffs to avoid enforcement "are simply

---

[12] As discussed supra Part I, the court may consider these statements as evidence submitted in support of or opposition to a motion to dismiss for lack of subject-matter jurisdiction. Aversa, 99 F.3d at 1210.

[13] In particular, the Lovering Health Center and Concord Feminist Health Center representatives explained that "having the option of creating a buffer if other methods fail, is a significant safeguard that is a very useful tool for the clinic to have in its toolbox," compared to the slower process of legislation or passing town ordinances.  Document no. 39 ¶ 11; document no. 40 ¶ 6.  The former noted that such an option "would be helpful when negotiating about unsafe behaviors of the demonstrators," document no. 40 ¶ 6, a forward-looking statement that does not suggest that any such "negotiation" had yet taken place.  She also testified at a public hearing on House Bill 403-FN, that "the threat of having [the law] enforced . . . I think did make people behave in a better way" than previous incidents wherein "picketers . . . were using bullhorns, . . . were throwing things at cars coming in and out and blocking the driveway and generally disturbing the peace . . . ."  Document no. 65-2 at 87-88.

the product of their fear of surveillance, and . . . such a fear is insufficient to create standing.").

Second, plaintiffs propose an interpretation of the Act allowing enforcement against them without a zone being demarcated, see Plaintiffs' Obj. (document no. 65-1) at 15-16, which, they contend, would render the threat of enforcement immediate.  They propose that RSA 132:38, I "bluntly creates zones making it illegal to be present, and therefore to speak, on public ways up to 25 feet from an entrance or driveway of an abortion facility." Id. at 15.  Because the zones are "created" by that section of the Act, and only "demarcated" by placement of the signs, plaintiffs contend, they could be prosecuted for speaking within those zones under, for example, New Hampshire's laws against disorderly conduct, loitering, and harassment.  See N.H. Rev. Stat. Ann. §§ 644:2 and 644:4.  While the court is unlikely to share that interpretation of the Act,[14] it need not hang its decision there.[15]  While plaintiffs suggest that such a

---

[14] As discussed supra at n.6, the language of the Act itself precludes such a reading.  In particular, 132:38, II permits clinics to demarcate the zone "authorized" by the first part of that section, not the zone "created" or "established" thereby.

[15] Plaintiffs argue that the admonition to indulge all reasonable factual inferences in the plaintiff's favor in resolving this motion, see Katz, 672 F.3d at 70, also requires the court to defer to the plaintiff's legal interpretation of the Act.  See Plaintiffs' Obj. (document no. 65-1) at 15.  It is

state of affairs <u>could</u> chill their speech, they do not allege

that they have been threatened with prosecution under these

other laws.  They also do not allege that their speech actually

<u>has</u> been chilled by fear of such a prosecution.  <u>See</u> Plaintiffs'

Obj. (document no. 65-1) at 16; Compl. ¶ 92 ("Plaintiffs desire

to continue engaging in peaceful sidewalk counseling and

leafleting in these public areas but fear prosecution under the

Act if they continue to do so.").  Absent such an allegation of

injury, the court cannot find standing on this basis.  <u>Cf.</u> SBA

List, 134 S. Ct. at 2340 (complaint alleged that plaintiff's

speech had been chilled under the challenged statute).

Third and finally, plaintiffs suggest that this court's

stay of the litigation created standing.  <u>See</u> Plaintiffs' Obj.

(document no. 65-1) at 5-7.  As discussed <u>supra</u>, Part II.C, by

its order of July 23, 2014, the court stayed all pending

deadlines in this action by agreement of the parties.  The

parties further agreed that the defendants would not enforce the

Act against the plaintiffs and, if the defendants received

---

axiomatic, however, that the court need not defer to the
complaint's legal conclusions in resolving a motion to dismiss.
Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 10 (1st Cir.
2011) ("Unlike factual allegations, legal conclusions contained
within a complaint are not entitled to a presumption of truth."
(citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

notice that any clinic intended to post a sign, they would notify the plaintiffs and the court.  Order of July 23, 2014 (document no. 49) at 3-4.  Notably, the court's order did not prohibit the clinics' creation or demarcation of any zone.  If they had been drawn during the pendency of the stay, plaintiffs argue, those zones would have no legal effect because the defendants were -- by this agreement -- prohibited from issuing any warnings or citations under the Act or any other statute using speech in a buffer zone as the basis.  Plaintiffs' Obj. (document no. 65-1) at 7.

Invoking the post hoc ergo propter hoc fallacy, plaintiffs suggest that the very existence of the court's stay caused the clinics to refrain from demarcating any buffer zones, thus relieving the plaintiffs from the need to self-censor their speech.  Following from this, plaintiffs argue, "the impact of the Court's 2014 Order proves not only that standing exists to seek relief, but that effective relief was already awarded." Id.  But Plaintiffs cite no authority for the novel theory that the court can conjure subject-matter jurisdiction from thin air by giving force to the parties' agreed-upon conditions for a stay of the action.  Nor can they; such a theory would run afoul of the requirement that plaintiffs have Article III standing at the outset of the litigation.  See Friends of the Earth, 528

U.S. 167, 180.  The court's actions subsequent to plaintiff's
filing of the complaint did not bestow subject-matter
jurisdiction over the action.

In sum, the plaintiffs are not subject to a certainly
impending threat that the Act will be enforced against them, see
Clapper, 133 S. Ct. at 1155, or even a substantial risk of such
enforcement, see SBA List, 134 S. Ct. at 2341, because no buffer
zone has been drawn, whether before commencement of the suit or
in the 21 months since.  Accordingly, the plaintiffs lack
standing to bring a pre-enforcement challenge against the Act.

### 2.  Delegation of undue discretion

Plaintiffs also claim that they have standing to challenge
the Act as facially unconstitutional because they alleged, in
their complaint, that the Act delegates what amounts to undue
discretion to the clinics to demarcate the buffer zones.  See
Plaintiffs' Obj. (document no. 65-1) at 13-14; Plaintiffs' Supp.
Brief (document no. 80) at 6-7.  Plaintiffs draw this conclusion
from the decision of the First Circuit Court of Appeals in Van
Wagner, arguing that the Circuit Court's reasoning in that
decision extends beyond the prior restraint context.  But the
court finds no support for this novel theory, either in and of
itself, or read generously as an argument for standing to
challenge the Act as a prior restraint on plaintiffs' speech.

28

A plaintiff may have pre-enforcement standing to challenge a statute as unconstitutional under the First Amendment when it amounts to an invalid prior restraint. An invalid prior restraint is a regulation that "[gives] public officials the power to deny use of a forum in advance of actual expression." Ward v. Rock Against Racism, 491 U.S. 781, 795 n.5 (1989) (quotations omitted). Thus, "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 755-56 (1988); see also Van Wagner, 770 F.3d at 38 ("It is being subject to a prior restraint on protected expression through requirements embodying standardless discretion, not being harmed by the unfavorable exercise of such discretion, that causes the initial injury.").

Plaintiffs ask the court to interpret this standing doctrine broadly, divorcing the rhetoric of the prior restraint standing doctrine as outlined in Van Wagner from the licensing or permitting context. They read the Act to "authorize[] private actors to do what the State cannot itself do under McCullen: create speech-suppressing zones absent a present narrow tailoring justification." Plaintiffs' Obj. (document no.

29

65-1) at 12.  This, plaintiffs argue, amounts to vesting the
clinics with the unbridled discretion over plaintiffs'
expression as contemplated in City of Lakewood and Van Wagner.
And this allegation of the investiture of unbridled discretion,
they conclude, creates standing for them to challenge the Act,
even outside the context of a regulatory or licensing program.
See Plaintiffs' Supp. Brief at 6 ("The import of Van Wagner for
the purposes of standing is that plaintiffs may assert a facial
claim against state-conferred discretion over protected free
speech when the statute conferring that discretion is enacted .
. . .").

        But the Supreme Court has rejected so broad a reading of
the prior restraint doctrine, and so must this court.
"[C]oncerns about 'prior restraints' relate to restrictions
imposed by official censorship."  Hill v. Colorado, 530 U.S.
703, 734 (2000).  When public officials are given

        the power to deny use of a forum in advance of actual
        expression[,]  . . . the Court has felt obliged to
        condemn systems in which the exercise of such
        authority was not bounded by precise and clear
        standards. . . .  Our distaste for censorship --
        reflecting the natural distaste of a free people -- is
        deep-written in our law.

Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 553
(1975).  This is, however, not such a case.  Here, the
plaintiffs are not obligated to seek a license or advance

permission to speak -- whether from a government official or a third party to whom the government has delegated that power. Thus, this situation does not implicate the same concerns of a priori censorship as the regulatory licensing or permitting schemes that gave rise to standing in Southeastern Promotions, City of Lakewood, and Van Wagner.  It is, rather, a situation in which "particular speakers [would be] at times completely banned within certain zones," and the Supreme Court has consistently rejected attempts to characterize such statutes as prior restraints on speech.  Hill, 530 U.S. at 733-34; see also Schenk v. Pro-Choice Network of Western N.Y., 519 U.S. 357, 374 n.6 (1997); Madsen v. Women's Health Center, Inc., 512 U.S. 753, 764 n.2 (1994).

Nor does the court read the holding in Van Wagner to extend as far as plaintiffs argue it does.  There, First Circuit Court of Appeals held that the plaintiff had standing because it "plausibly alleged that it is subject to a regulatory permitting scheme that chills protected expression by granting a state official unbridled discretion over the licensing of its expressive conduct."  Van Wagner, 770 F.3d at 42.  Nowhere in that decision does the court find the suggestion that pleading the grant of unbridled discretion, absent the context of a government official acting within a licensing or permitting

31

scheme, is alone sufficient to create standing.  To the contrary, the Court of Appeals' decision appears, at least to this court, firmly couched in the prior restraint context.

Plaintiffs are thus left to argue that an <u>allegation</u> of delegation is enough to give the plaintiffs standing completely divorced from that context.  In doing so, plaintiffs lean heavily on the decision of the Tenth Circuit Court of Appeals in First Unitarian Church of Salt Lake City v. Salt Lake City Corp., 308 F.3d 1114 (10th Cir. 2002).  There, the city sold a portion of a main downtown thoroughfare to a church, but retained a pedestrian easement over the property.  Id. at 1117-18.  In its agreement with the church, the city disclaimed the easement as a public forum and permitted the church to prohibit certain forms of expression thereupon.  Id. at 1118.  The plaintiffs challenged the sale and easement, arguing, among other things, that the prohibitions of expression on what, in effect, remained a public passageway, offended the First Amendment.  The Tenth Circuit Court of Appeals concluded that it did, and that the city could not ameliorate that offense by delegating its power to enforce that prohibition to a third party.  Id. at 1132.  As far as this court can tell, however, the Court of Appeals focused its standing analysis, which comprised a single paragraph, on the threat of enforcement of an

effective prohibition of all expression on a public thoroughfare, not the delegation of authority or the amount of discretion exercised by the delegate.  See id. at 1121.  As discussed supra, Part III.A.1, no such threat of enforcement exists here absent the demarcation of a buffer zone and posting of accompanying signage.

The reasoning of First Unitarian thus does not compel the conclusion the plaintiffs have standing to challenge the Act under a delegation or unbridled discretion theory outside of the prior restraint context.  And, as discussed above, even if plaintiffs argued that the Act serves as a prior restraint on their speech, they could not successfully do so where, as here, no licensing or permitting scheme is implicated.  Accordingly, plaintiffs' attempt to dress their discretion allegations in the clothing of prior restraint for standing purposes must fail.

**B.   As-applied challenge**

As established above, the plaintiffs lack standing to challenge the Act as unconstitutional on its face.  The plaintiffs similarly lack standing to challenge the Act as unconstitutional as applied to them.  It is "an uncontroversial principle of constitutional adjudication[] that a plaintiff generally cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely

to be) unconstitutionally <u>applied</u> to him." McCullen, 134 S. Ct.
2518, 2535 n.4 (2014) (emphasis in original).  As discussed
<u>supra</u>, Part III.A.1, the plaintiffs have not carried their
burden of showing that the Act is likely to be applied to them.
And the parties all agree that the Act has not, to date, been
applied to the plaintiffs.  No buffer zone has been demarcated
and no plaintiff has been warned, fined, or prosecuted under
this Act or any other law for engaging in expressive activity
outside the clinics.  Absent any demarcated buffer zone, there
can be no basis on which to analyze whether the Act has been
applied to any of the plaintiffs in a manner that abrogates
their rights under the First Amendment.[16]  <u>Cf.</u> Wash. State Grange

---

[16] The parties appear to disagree on whether <u>McCullen</u> is
best characterized as disposing of an as-applied challenge to
the Massachusetts buffer zone statute (the Attorney General's
position), or a facial challenge (the plaintiffs' position).
<u>Compare</u> Attorney General's Mem. (document no. 63-1) at 4-5
(Massachusetts statute was found "unconstitutional <u>as applied</u> to
the plaintiffs in that case because it was not narrowly tailored
to serve a significant government interest based on the factual
record before the Court."), <u>with</u> Plaintiffs' Obj. (document no.
65-1) at 14 ("<u>McCullen</u> reviewed and struck down the
Massachusetts law as being facially invalid.").  (Indeed,
plaintiffs appear to disagree with themselves on this issue.
<u>Compare</u> Plaintiffs' Obj. (document no. 65-1) at 14 <u>with</u>
Plaintiffs' Supp. Brief (document no. 80) at 2 (characterizing
pre-enforcement challenges as "as applied challenges under
<u>McCullen</u>'s narrow tailoring test").)  This court is inclined to
view <u>McCullen</u> as addressing a facial challenge, as did the First
Circuit Court of Appeals.  <u>See</u> Cutting v. City of Portland, 802
F.3d 79, 86 (1st Cir. 2015) (describing <u>McCullen</u> as "striking
down content-neutral, sidewalk buffer zone law facially on

v. Wash. State Republican Party, 128 S. Ct. 1184, 1195 (2008)

(factual determinations control as-applied challenges).

## IV.   Conclusion

The plaintiffs' lack of standing to bring this action

deprives the court of subject-matter jurisdiction over it.

United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 26

(1st Cir. 2007).   Lacking subject-matter jurisdiction, the court

is obligated to dismiss the action.   Fed. R. Civ. P. 12(h)(3).

Accordingly, the Attorney General's renewed motion to dismiss

the complaint[17] is GRANTED, albeit without prejudice to the

plaintiffs seeking relief anew under different factual

circumstances.   For the same reasons, the municipal defendants'

---

narrow tailoring grounds.").   Whether McCullen involved an as-
applied or facial challenge, however, the Supreme Court relied
on factual record developed by the district court over two bench
trials.   See McCullen, 134 S. Ct. at 2528.   Because this
question comes before this court as a motion to dismiss for lack
of standing, the court has not had the opportunity to develop
such a record.   And, more importantly, because no buffer zone
has yet been drawn around which such a record could be based,
there are few facts to develop here.

[17] Document no. 63.

motions for judgment on the pleadings[18] are likewise GRANTED.[19]

The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:    March 31, 2016

cc:  Michael J. Tierney, Esq.
     Elissa Graves, Esq.
     Matthew S. Bowman, Esq.
     Nancy J. Smith, Esq.
     Elizabeth A. Lahey, Esq.
     Garry R. Lane, Esq.
     Peter R. Chiesa, Esq.
     Thomas R. Clark, Esq.
     Danielle L. Pacik, Esq.
     James William Kennedy, Esq.
     Charles P. Bauer, Esq.
     Samantha Dowd Elliott, Esq.

---

[18] Document nos. 75 & 77.

[19] Because the court concludes that it lacks subject-matter jurisdiction over this matter, it need not -- and accordingly does not -- address the municipal defendants' arguments under Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), and 19.